**NORWICH EATON PHARMACEUTICALS, INC., Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, et al., Defendants.**

Civ. No. C–1–85–1914.

United States District Court, S.D. Ohio, W.D.

March 3, 1986.

Frank Woodside, Cincinnati, Ohio, for plaintiff.

Gerald Kaminski, Cincinnati, Ohio, Kenneth Jost, Washington D.C., Mark Heller, Rockville, Md., for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court following the presentation of evidence at a trial to the Court, and the filing of post-trial memoranda. Plaintiff Norwich Eaton Pharmaceuticals, Inc. (hereinafter "Norwich Eaton") seeks a declaration of its rights under Sections 505(j)(4)(D) and 505(c)(3)(D) of the Federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 et seq. (FFDCA). Plaintiff also seeks an injunction requiring defendants Otis R. Bowen, et al. (hereinafter "defendants" or "the FDA") to recognize the appropriate non-patent exclusivity period for the marketing of BUPRENEX and preventing defendants from taking any action inconsistent with plaintiff's rights during that exclusivity period.

In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its Findings of Fact, Opinion and Conclusions of Law.

## I.

### FINDINGS OF FACT

1. Plaintiff, Norwich Eaton is an Ohio corporation engaged in the business of researching, developing, manufacturing and marketing pharmaceutical products.

2. Reckitt and Colman, Ltd. is a pharmaceutical company in England which holds the patent to the drug buprenorphine hydrochloride. Norwich Eaton is licensed by Reckitt and Colman to distribute buprenorphine hydrochloride in the United States under the trade name Buprenex Injectible (Buprenex).

3. Buprenex in an analgesic drug derived from the substance Ihebaine. By virtue of its derivation from the opiate thebaine, Buprenex is a narcotic drug subject to control by the Drug Enforcement Administration (DEA) under the Controlled Substances Act (CSA), 21 U.S.C. § 812.

4. On October 31, 1979, plaintiff filed a New Drug Application (NDA) with the Food and Drug Administration (FDA) for Buprenex. Prior to this time, buprenorphine hydrochloride had not been approved for marketing in the United States.

5. On October 14, 1981, Dr. Marion Finkel, M.D., of the FDA sent plaintiff a letter stating that the NDA for Buprenex would be approved if certain changes were made in the labeling. Dr. Finkel also cautioned that the drug was not marketable until final rulemaking procedures by the DEA. (Ex. A at 29–32)

6. On December 29, 1981 Dr. Finkel sent another letter to plaintiff in which she stated that, "the application is approved." (Ex. A at 36)

7. On January 27, 1982, plaintiff submitted to the FDA revised draft labeling incorporating the changes requested by the FDA in its October 14, 1981 letter. (Ex. A at 38–54) This draft labeling did not include the controlled substance schedule of the drug. On May 24, 1982, the FDA replied to plaintiff, requesting additional changes to the labeling. (Ex. A at 56–58)

8. Further amendments to the labeling were filed by plaintiff in September, 1984 and February and March, 1985. (*See* Ex. A at 66) On February 28, 1985 the DEA ruled that buprenorphine hydrochloride is a Schedule V Narcotic Controlled Substance. (*See* Ex. A at 107) On June 20, 1985 the FDA made its final request for changes in the Buprenex labeling. (Ex. A at 66–70)

9. On June 24, 1985, the FDA received final printed labeling from plaintiff for Buprenex. On June 28, 1985 this labeling was approved. (Ex. A at 72) Plaintiff began marketing Buprenex on June 29, 1985.

10. Plaintiff filed a citizen petition on August 19, 1985 with the FDA regarding the exclusivity status of Buprenex. On December 6, 1985, the FDA, through the Secretary of Health and Human Services, ruled that the NDA for Buprenex was approved on December 29, 1981 and that therefore the exclusivity provisions of §§ 505(j)(4)(D) and 505(c)(3)(D) of the FFDCA did not apply to Buprenex.

## II.

### OPINION

The Drug Price Competition and Patent Term Restoration Act became law on September 24, 1984. This amendment to the FFDCA was enacted to serve two purposes. Title I of the Act facilitates FDA approval of generic copies of pioneer drugs by permitting manufacturers to submit Abbreviated New Drug Applications (ANDA). Title II encourages research on new pioneer drugs by providing for an extension of patent rights to make up for time lost in performing the extensive testing required for FDA approval of a pioneer drug. In addition, Title I provides a limited period of protection from competition through its exclusivity provisions under which the FDA may not make immediate approval of generic drug ANDAs or paper NDAs for certain previously approved pioneer drugs. §§ 505(j)(4)(D) and 505(c)(3)(D), FFDCA 21 U.S.C. 301 *et seq.* The period of exclusivity, either 5 or 10 years, depends on when the pioneer drug's NDA was approved. NDAs approved prior to January 1, 1982 are not entitled to any period of exclusivity.

The present case turns on when the NDA for Buprenex was approved. Plaintiff asserts that the Buprenex NDA was approved either on June 28, 1985, when the final printed labeling was approved; or it was approved sometime in 1982 after plaintiff had submitted its revised draft labeling. Defendants, on the other hand, assert that the Buprenex NDA was approved on December 29, 1981 via Dr. Finkel's letter to plaintiff which specifically stated that "the application is approved." Moreover, defendants argue that plaintiff's claim is one for review under the Administrative Procedure Act and that the Court should find that the decision of the FDA was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." (citing 5 U.S.C. § 706(2)(a)).

Upon review of the administrative record, the memoranda and the arguments by counsel, the Court finds that the Secretary's decision that the December 29, 1981 letter constituted final approval of the Buprenex NDA, is not substantiated in the record and is not in accordance with the FDA's own regulations.

Under the FFDCA plaintiff could not market the drug Buprenex in the United States until its NDA was effective. 21 U.S.C. § 355(a) Under 21 U.S.C. § 355(b), the sponsor of a new drug must submit "specimens of the labeling proposed to be used for such drug" in its NDA before the application will be considered. Moreover, the FDA has promulgated extensive regulations defining what must be included in prescription drug labeling. 31 C.F.R. § 201.57(h)(1) provides:

Controlled Substance: If the drug is controlled by by the Drug Enforcement Ad-

ministration, the schedule in which it is controlled shall be stated.

The DEA did not issue its final rule on the scheduling of buprenorphine hydrochloride until February 28, 1985. Therefore, until that date, plaintiff's labeling submissions were, by the FDA's own definitions, insufficient for approval.

In other regulations, the FDA has stated its policy not to approve an NDA until labeling is in its final form. For example, 21 C.F.R. § 314.1(c) provides:

4(e) Typewritten or other draft labeling may be submitted for preliminary consideration of an application. An application will not ordinarily be approved prior to the submission of the final printed label and labeling of the drug.

However, according to 21 C.F.R. § 314.-100(d), an NDA may achieve "approvable" status before final printed labeling is submitted.

On the basis of preliminary consideration of an application or supplemental application containing type-written or other draft labeling in lieu of final printed labeling, an applicant may be informed that such application is approvable when satisfactory final printed labeling indentical in content to such draft copy is submitted.

Clearly, and the parties agree, the October 14, 1981 letter from Dr. Finkel was notice of the "approvable" status of Buprenex in accordance with the FDA's ordinary practice under 21 C.F.R. § 314.100(d). It is equally clear that Dr. Finkel's letter of December 29, 1981 could be no more than a conditional approval of Buprenex. Although plaintiff had agreed to the labeling changes requested in the October 14, 1981 letter, labeling was still not in its final form. No controlled substance schedule was included in the draft labeling as required by 21 C.F.R. § 201.57(h)(1). Indeed, labeling with the CSA schedule was not provided until March 11, 1985. Moreover, final printed labeling, which included the CSA schedule was not approved until June 28, 1985. Thus, the FDA's "approval" of the Buprenex NDA was contingent upon and not effective until approval of labeling in its final form.

For these reasons the Court holds that the effective date of the Buprenex NDA is June 28, 1985. Therefore, plaintiff under §§ 505(j)(4)(D)(ii) and 505(c)(3)(D)(ii) of the FFDCA, 21 U.S.C. § 301 *et seq.*, is entitled to a five year exclusivity period for the drug Buprenex beginning June 28, 1985.

## III.

### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 706.

B. Buprenex is a narcotic drug subject to control under the Controlled Substances Act and could not be marketed until the DEA ruled on its scheduling. 21 U.S.C. § 801 *et seq.*

C. A prescription drug subject to control under the Controlled Substances Act must include its CSA schedule on its label. 21 C.F.R. 201.57(h)(1); 21 U.S.C. § 825.

D. Defendant's decision that December 29, 1981 was the effective date for approval of the Buprenex NDA is not substantiated in the administrative record and is not in accordance with FDA regulations.

E. Approval of the Buprenex NDA was contingent upon approval of labeling in its final form and therefore not effective until June 28, 1985.

F. Plaintiff is entitled to five years exclusivity for the drug Buprenex beginning June 28, 1985 and ending June 27, 1990. §§ 505(j)(4)(D)(ii) and 505(c)(3)(D)(ii), FFDCA, 21 U.S.C. § 301 *et seq.*

G. Defendants are hereby enjoined from approving any ANADAs or paper NDAs for generic equivalents of Buprenex until June 27, 1990. *Id.*

IT IS SO ORDERED.